# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION



FILED 05 SEP 23 PH 2:51

|  |  |
|---|---|
| PHYLLIS FOWLKES, | ) |
| Plaintiff, | ) |
| VS. | ) No. 04-2964-T/V |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA d/b/a PRUDENTIAL FINANCIAL and COLONIAL DIVERSIFIED POLYMER PRODUCTS, L.L.C., | ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE RECORD

The plaintiff, Phyllis Fowlkes, filed this action against Prudential Insurance Company of America and Colonial Diversified Polymer Products, L.L.C. ("CDPP") pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff alleges that the defendants wrongfully terminated her short term disability benefits and denied her claim for long term disability benefits. Therefore, plaintiff challenges the denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Before the Court is the defendants' motion for judgment on the record. Plaintiff has not responded to the motion.

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 9/26/05

In addition to the cause of action under § 1132(a)(1)(B), in her complaint plaintiff asserts causes of action for discrimination pursuant to § 1182(a)(1) and for breach of fiduciary duty pursuant to § 1104(a)(1)(A).

Section 1182(a) is inapplicable in this case. That section, which is entitled, "Prohibiting discrimination against individual participants and beneficiaries based on health status," provides:

> (a) In eligibility to enroll
>   (1) In general
>       Subject to paragraph (2), a group health plan, and a health insurance issuer offering group health insurance coverage in connection with a group health plan, may not establish rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual:
>       (A) Health status.
>       (B) Medical condition (including both physical and mental illnesses).
>       (C) Claims experience.
>       (D) Receipt of health care.
>       (E) Medical history.
>       (F) Genetic information.
>       (G) Evidence of insurability (including conditions arising out of acts of domestic violence).
>       (H) Disability.
>   (2) No application to benefits or exclusions
>       To the extent consistent with section 1181 of this title, paragraph (1) shall not be construed—
>       (A) to require a group health plan, or group health insurance coverage, to provide particular benefits other than those provided under the terms of such plan or coverage, or
>       (B) to prevent such a plan or coverage from establishing limitations or restrictions on the amount, level, extent, or

> nature of the benefits or coverage for similarly situated
> individuals enrolled in the plan or coverage.

Thus, § 1182(a)(1) prohibits only the establishment of rules for <u>eligibility to enroll</u> in an ERISA health plan based on the listed factors. Paragraph (a)(2) clearly states that the prohibition has no application to the particular benefits or exclusions provided by an ERISA plan. Plaintiff does not allege that the defendants used any impermissible factors in determining her eligibility to enroll in the plan.

As plaintiff does not seek relief on behalf of the plan itself, the Court presumes that her claim for breach of fiduciary duty under § 1104(a)(1)(A) does not arise under § 1109 and § 1132(a)(2).[1] See <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 140-44 (1985) (Section 1132 (a)(2) authorizes an individual to bring suit to enforce § 1109, under which relief may be awarded only to the plan itself, not to the individual.). Thus, plaintiff's cause of action must arise under § 1132(a)(3), which provides "[a] civil action may be brought —

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice
> which violates any provision of this subchapter or the terms of the plan, or
> (B) to obtain other appropriate equitable relief (i) to redress such violations
> or (ii) to enforce any provisions of this subchapter or the terms of the plan.

The Supreme Court held, in <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 507-15 (1996), that individual equitable relief may be sought under § 1132(a)(3). However, the Supreme Court also noted in <u>Varity</u> that:

---

[1] Section 1104(a)(1)(A) itself does not provide for any cause of action. It merely sets out the specific duties of those who are fiduciaries under ERISA.

3

> where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

516 U.S. at 515. The Sixth Circuit, relying on Varity, has held that where an action for breach of fiduciary duty under § 1132(a)(3) is, in effect, merely a challenge to a plan administrator's denial of benefits that can be fully remedied under § 1132(a)(1), no further relief is appropriate. See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615-16 (6th Cir. 1998). That is the case here. It is clear from the plaintiff's complaint that the essence of her claim is a challenge to the termination and denial of benefits.

Plaintiff became employed by CDPP in 1987. CDPP offered its employees an ERISA-governed disability insurance plan that provided for both short term and long term disability benefits. CDPP is both the plan sponsor and the plan administrator. Prudential is the underwriter for the plan and serves as claims administrator. Upon her employment, plaintiff enrolled as a plan participant.

Under the disability insurance plan, a short term disability is defined as an inability "to perform the material and substantial duties of your regular occupation due to your sickness or injury," with a "20% or more loss in weekly earnings" as a result of that sickness or injury. (A.R. at 11.) A plan participant must be continuously disabled for 180 days in order to be entitled to long term disability benefits. (A.R. at 42.)[2]

---

[2] The plan defines a long term disability as an inability "to perform the material and substantial duties of your regulation occupation" with a "20% or more loss in your indexed monthly earnings" as a result of that sickness of injury. After benefits have been paid for two years, the employee must be "unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." (A.R. at 41.)

4

On April 9, 2003, plaintiff went off work due to a bulging disk in her lumbar spine. She filed a claim for short term disability benefits, which was initially approved through May 18, 2003 and then extended through August 2003, pending review of the claim. (A.R. at 77-78, 84-86.) Subsequently, by letter dated September 15, 2003, Prudential notified plaintiff that upon review of her claim it had been determined that, as of August 25, 2003, she no longer met the criteria for short term disability. Therefore, her benefits were terminated. As Prudential determined that plaintiff had not been continuously disabled for 180 days, it also found that she was not entitled to long term disability benefits. (A.R. at 90-92.)

Plaintiff appealed Prudential's decision by letter dated October 7, 2003 and submitted additional medical information to support her claim. (A.R. at 95-104, 112-116.) Prudential reviewed the claim, including the additional information, and denied the appeal by letter dated December 15, 2003. (A.R. at 118-121.) Although plaintiff was advised that she could file a second appeal, she chose not to do so. She filed this action on November 24, 2004.

The defendants first contend that plaintiff's claim is barred because she has failed to exhaust her administrative remedies. Even though "ERISA does not specifically command exhaustion" most circuits have held that exhaustion of administrative remedies is a condition precedent to filing a civil action. Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 504 (6th Cir. 2004) (quoting Ravencraft v. UNUM Life Ins. Co. of Am., 212 F.3d 341, 343 (6th Cir. 2000)). See also Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999).

5

In this case, plaintiff was notified by letter dated December 15, 2003 that her first appeal had been denied. The letter further notified plaintiff of her right to file a second appeal within 180 days and of her right to file suit if the second appeal was also denied.[3] However, plaintiff failed to request a second appeal. Consequently, plaintiff's complaint is subject to dismissal due to her failure to exhaust her administrative remedies.

Notwithstanding plaintiff's failure to exhaust, the Court also concludes that plaintiff's claim should be denied on the merits. The Supreme Court has held that "a denial of benefits challenged under § 1132 (a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants such discretionary authority, the arbitrary and capricious standard is to be used. Id. at 114-15. See also Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston, 419 F.3d 501, 505-06 (6th Cir. 2005); Wilkins, 150 F.3d at 613. Regardless of whether the appropriate standard of review for denial of benefits in a particular case is de novo or arbitrary and capricious, the district court is confined to the record that was before the plan administrator. Wilkins, 150 F.3d at 615.

In this case, the terms of the disability insurance plan give the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the

---

[3] The letter further notified plaintiff that if a second appeal were to be denied, she could file still a third appeal. However, the third appeal would not be required, and would not affect her right to bring a civil action following denial of the second appeal. This is in accordance with 29 C.F.R. § 2560.503-1(c)(2), which prohibits requiring more than two levels of appeals prior to bringing suit.

plan.[4] Thus, the Court must determine whether Prudential's denial of benefits was arbitrary and capricious.

A review of the medical evidence in the record shows that the only diagnostic imaging test, an MRI of plaintiff's lumbar spine performed on July 11, 2003, was normal except for a small hemangioma within the L1 vertebra and very minimal disc bulge at L4-5. The radiologist's opinion was mild degenerative disc change, minimal disc bulge at L4-5 without neuroforamen or canal encroachment, and no HNP. On July 28, 2003, Dr. Glenn A. Crosby II, M.D., one of plaintiff's treating physicians, noted that the "MRI scan shows mostly degenerative changes at L4 with modic endplate edema. I don't see any evidence of a large ruptured disk or anything that would require surgery." He ordered four weeks of physical therapy. (A.R. at 140-144.)

Plaintiff underwent eleven physical therapy sessions from July 30, 2003 to August 20, 2003. (A.R. at 146-170.) On September 22, 2003, she complained to Dr. Crosby that the therapy had actually aggravated her back. Dr. Crosby's impression was degenerative spondylosis with mechanical back pain. He sent plaintiff for a functional capacity evaluation ("FCE") and stated that her primary care physician, Dr. Mohammad Yousuf, would ascertain her final disability. Dr. Crosby also noted that plaintiff had obvious signs

---

[4] The Summary Plan Description provides: "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (A.R. at 72.)

7

of arthritis in her hands and was asking for a referral to a rheumatologist, which he arranged. (A.R. at 172.)

The FCE was conducted by a physical therapist on October 1, 2003. (A.R. at 96-103.) In summary, the therapist opined that plaintiff was "severely deconditioned both aerobically and physically" and that she was unable to perform the essential functions of her current job. He stated that if plaintiff "is to return to gainful employment it would need to be at a very sedentary type position." (A.R. at 103.) However, the therapist acknowledged inconsistencies in plaintiff's results that raised questions about the validity of the testing:

> Patient had positive reproduction of pain with actual loading and also simulated rotation. Patient also had excessive coefficients of variation with the isometric lift test. Patient had excessive coefficients of variation on 3 of the 5 task, this would indicate some degree of submaximal effort given during the test. You would expect coefficients of variation below 15% between the trials to demonstrate good consistent effort.

(A.R. at 99.) The coefficients of variation on the three tasks mentioned by the therapist were well over 15%, at 27.3%, 30% and 32.1%, suggesting that the plaintiff limited her efforts during the FCE. (A.R. at 100.) The therapist also noted that plaintiff had "excessive verbalizations, facial expressions and muscle tension during all active movement of the lumbar spine." (A.R. 98.)

On November 6, 2003, Dr. Yousuf completed a residual functional capacity questionnaire, on which he indicated that plaintiff had severe back and arthritis pain. He indicated that she was incapable of sitting or standing for more than 10-15 minutes at a time, or for more than two hours total in an eight-hour day. Dr. Yousuf further indicated that

8

plaintiff could never lift any weight, and could use her fingers, hands and arms repetitively for only 5% of an eight-hour workday. It was his opinion that plaintiff was not able to work. (A.R. at 176-180.)

The arbitrary and capricious standard is highly deferential. The decision "must be upheld as long as it is rational in light of the Plan's provision, as well as reasonable with no abuse of discretion. . . . a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." Marchetti v. Sun Life Assurance Co. of Canada, 30 F. Supp. 2d 1001, 1008 (M.D. Tenn. 1998) (citations omitted). See also Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380-81 (6th Cir. 1996). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Fin. Cos. Ret. Plan, 887 F.2d 689, 693 (6th Cir. 1989) (quoting Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir. 1985)); see also Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998).

The record shows that Prudential denied plaintiff's initial claim and the subsequent appeal because it determined that she had presented insufficient objective clinical evidence that she was disabled as defined in the plan. (A.R. at 90-92, 118-121.) Prudential relied upon the July 11, 2003 MRI, which showed only minor abnormalities. (A.R. at 90-91, 120.) Prudential also relied upon the inconsistencies that called into question the validity of the FCE. (A.R. at 120.) In addition, although Prudential considered Dr. Yousuf's opinion as

9

to plaintiff's residual functional capacity, that opinion was rejected on the basis that Dr. Yousuf had failed to provide any test results or clinical examinations to support the restrictions. Id. Specifically, Prudential reasoned as follows:

> We have reviewed the FCE and the statement from Dr. Yousuf. Ms. Fowlkes had excessive co-efficients of variance on the lifting test, which indicates self limited effort. The grip strengths demonstrated by Ms. Fowlkes on the FCE were greater than 2 standard deviations below mean for a person of this age and gender, even for someone with signs of osteoarthritis in their hands, as pointed out by the FCE examiner. The grip strength is inconsistent with a 15 minute drive to the FCE and opening and closing a standard office door, which it is noted Ms. Fowlkes was capable of doing in the report. This raises questions to the validity of the testing in the FCE. The examiner also notes Ms. Fowlkes rating of pain at 10/10 on the day of FCE. This is the highest possible rating and is inconsistent with ambulatory care. Also, there are reports of occasional numbness and tingling in the whole of the right upper extremity, bilateral lower extremity weakness. Her presentation was with marked forward head and rounded shoulder posture with a slow guarded antalgic gait. All of these findings cannot be explained on a thoracolumbar basis. Although the FCE concludes Ms. Fowlkes to be capable of sedentary work, this is not supported by the diagnostic testing (MRI from July 2003) or the FCE validity checks themselves.
>
> Although Dr. Yousuf indicates that Ms. Fowlkes is not capable of working at this time and provides severe restrictions and limitations, he does not provide any test results or clinical exams to support these restrictions.

Id.

Given the deferential nature of the arbitrary and capricious standard of review, the Court cannot say that Prudential's decision to deny benefits was unreasonable based on the evidence in the record, or that it was an abuse of discretion. Therefore, the decision was not arbitrary and capricious, and must be upheld.

10


The defendants' motion for judgment on the record is GRANTED. The Clerk of Court is directed to prepare a judgment.

IT IS SO ORDERED.

_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

23 September 2005
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 15 in case 2:04-CV-02964 was distributed by fax, mail, or direct printing on September 26, 2005 to the parties listed.

---

David L. Johnson
MILLER & MARTIN LLP
150 4th Ave., N.
Ste. 1200
Nashville, TN 37219--243

G. Brian Jackson
MILLER & MARTIN, LLP
150 Fourth Ave. N.
1200 One Nashville Place
Nashville, TN 37219--243

Michael L. Weinman
WEINMAN & ASSOCIATES
114 S. Liberty St.
Jackson, TN 38302

Honorable James Todd
US DISTRICT COURT